UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIEUTENANT COMMANDER SAWYER A. SMITH )<br>2160 Wisdom Arch )<br>Virginia Beach, VA 23456 )<br> )<br>    *Plaintiff,* )<br> )<br>v. )<br> )<br> )<br>The Honorable JOHN PHELAN, *in his official capacity as* )<br>SECRETARY OF THE NAVY, )<br> )<br>    *Defendant.* ) | Civil Action No. 1:25-cv-4463. |

## **PLAINTIFF'S COMPLAINT**

### *Introduction*

Lieutenant Commander ("LCDR") Sawyer A. Smith has served our country for nearly two decades in the United States Army Reserve ("USAR") and the United States Navy. In recognition of his long tenure of dedicated service, LCDR Smith is entitled to "enhanced pay" under Department of Defense ("DoD") regulations. This is a special basic pay rate for commissioned officers in pay grades O-1, O-2, and O-3 who have a certain amount of prior cumulative active service as an enlisted member or warrant officer.

Specifically, after LCDR Smith graduated from Officer Candidate School ("OCS") on February 6, 2015, as an Ensign (O-1), he became entitled to O-1E (O-1 Enhanced) pay. As he was promoted to O-2 and O-3, he was entitled to O-2E and O-3E pay, respectively. He was promoted to LCDR (O-4) in February 2025 and has been receiving his correct O-4 pay since that time. But LCDR Smith's Naval documents do not reflect any of his earned enhanced pay.

Seeking to correct this injustice, LCDR Smith applied to the Board for the Correction of Naval Records ("BCNR", "Board", or "the Board"), asking the BCNR to correct his record so that

1

he can receive the enhanced pay which he earned. But when reviewing LCDR Smith's application, the BCNR reached a decision unsupported by the evidence of record, ignored LCDR Smith's nonfrivolous arguments, and failed to correct injustice clearly present in the record, all in violation of 5 U.S.C. § 706 (2)(A).

LCDR Smith now comes with this complaint, seeking that this honorable Court hold the BCNR's decision to be arbitrary and capricious, and remand LCDR Smith's application to the BCNR for a new review which complies with all applicable laws and regulations.

### *Jurisdiction*

1. This Court has jurisdiction under 28 U.S.C. § 1331, and under 5 U.S.C. §706(2)(A), which provides for redress in the district courts based upon agency decisions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### *Venue*

2. Venue is proper under 28 U.S.C. §1391(e)(1).

### *Parties and Timeliness*

3. Plaintiff, LCDR Sawyer A. Smith, is a citizen of the United States who resides at the address listed in the caption. At all relevant times during the conduct that gave rise to this action, Plaintiff was a citizen of the United States, who was either residing in the United States, or on active duty in the USAR and/or the United States Navy.

4. Defendant, the Honorable John Phelan, is named in his official capacity as Secretary of the Navy. The Secretary of the Navy oversees the BCNR, which acts in the Secretary's name and makes recommendations to the Secretary as to whether applications by past and present members of the Navy and United States Marine Corps should be granted or denied. *See* 10 U.S.C. § 1552(a)(1).

5. LCDR Smith received a letter indicating that, on or about August 4, 2025, the BCNR had denied his application. As such, this action is timely filed. *See* 28 U.S.C. § 2401(a); *Rempfer v. U.S. Dept. of Air Force Bd. for Correction of Military Records,* 538 F.Supp.2d 200, 206 (D.D.C. 2008).

### *Legal Background*

6. After 20 qualifying years of service, USAR members may retire with eventual access to full military benefits. *See* 10 U.S.C. § 7311(a).

7. To have a year of USAR service serve as a qualifying year, USAR members must accumulate 50 points in that year. 15 of these points are membership points, which are automatically awarded at the end of the year. See 10 U.S.C. §§ 12732(a)(2), 12732(a)(2)(C)(i), 12732(a)(2)(C)(ii).

8. The remainder of the points may be earned through active participation in specified duty periods while on active service. *See generally* 10 U.S.C. § 12732(a)(2)(A), (B).

9. Active service is defined within 10 U.S.C. § 101(d)(4): "The term 'active status' means the status of a member of a reserve component who is not in the inactive Army National Guard or inactive Air National Guard, on an inactive status list, or in the Retired Reserve."

10. USAR members may be placed in "inactive" status in the Individual Ready Reserve ("IRR"). While in the IRR, members are generally not expected to perform duty and generally do not accumulate pay or points. *See generally* 10 U.S.C. § 10141. Time spent in inactive status in the IRR does not count as qualifying time towards retirement. *See* 10 U.S.C. § 12732(b)(1); *see also* 10 U.S.C. § 101(d)(4).

11. Under Department of Defense Instruction ("DoDI") 1215.07, "Service Credit for Non-Regular Retirement," membership points are pro-rated to a member when the member accumulates a partial year of qualifying service. For example, a member who serves 159-182 days

3

will receive 7 of a possible 15 membership points. DoDI 1215.07, Section 3.1e, Table 2.

12.　　When a member does not complete an entire year in active status, he is still entitled, under some circumstances, to have that year count as a qualifying year towards retirement.

13.　　Specifically, DoDI 1215.07 details the minimum number of points which a member is required to earn, including pro-rated membership points, in order to have a partial year count as a year of qualifying service towards retirement. *See also* MILPERSMAN 1820-050: "A member who has a break in service that occurs during an anniversary year may be credited with a partial year of qualifying service…A partial YQS [Year of Qualifying Service] is any period less than 12 full months in which the retirement points credited to a member, when computed proportionally to 12 months, are equal to, or greater than, 50 points."

14.　　So, for members who serve 161-168 days during a partial anniversary year, 23 points, including pro-rated membership points, is necessary to earn a partial year of qualifying service, as 23 points over 161-168 days pro-rates to 50 points over 365 days. *See* DoDI 1215.07, Section 3.1e, Table 1.

15.　　Under DoD 7000.14-R, Financial Management Regulation, Volume 7A, Chapter I, paragraph 2.3.1.6 "Active Enlisted and/or Warrant Officer Service for Members in Basic Pay Grades O-1 E, O-2E, or O-3E," ("DoD 7000.14-R"), effective November 24, 2003, "commissioned officers in pay grades O-1 through O-3 with more than 1,460 points computed under 10 U.S.C. § 12732(a)(2) for service as a warrant officer and/or an enlisted member, which requires a minimum of 50 points annually, are entitled to the special rate of pay."

16.　　In other words, if a commissioned officer has accumulated more than 1,460 points under the parameters outlined above, he is entitled to a "special rate of pay," also known as enhanced pay, or sometimes "E-pay."

*Statement of the Facts*

17. LCDR Smith first joined the USAR on September 29, 2006, as an enlisted Health Care Specialist.

18. This enlistment date sets September 29 as his anniversary date going forward for purposes of calculating years accruing towards retirement.

19. While serving in the USAR, LCDR Smith deployed for 10 months to Afghanistan. While on deployment, he hosted a walk-in clinic for Afghan civilians and worked with multi-national military trauma care teams from Germany, Norway, Latvia, and Hungary. LCDR Smith treated combat wounds for both American and coalition service members, enemy combatants, and Afghan civilians in emergency rooms, operating rooms, and intensive care units throughout the region.

20. During his USAR service, two of LCDR Smith's unit administrators were relieved of their positions due to negligence in accounting for soldiers' pay and service during drill periods, causing some soldiers to have incorrect pay and point totals. LCDR Smith's unit was not able to determine the full scope of the misconduct, which soldiers were impacted, and to what extent.

21. After nearly eight years of honorable and creditable enlisted service in the USAR, LCDR Smith decided to serve our country as a pilot in the Navy.

22. In order to facilitate the commissioning process into the Navy, LCDR Smith was reassigned from the USAR to the IRR from March 9, 2014, to October 31, 2014. His final USAR drill weekend prior to that change in status was March 2-3, 2014. Thus, he served in the USAR for a partial anniversary year from September 29, 2013, to March 8, 2014.

23. LCDR Smith received a letter from the Army dated February 10, 2014, which confirmed his upcoming reassignment to the IRR, effective March 9, 2014. He remained in the IRR until October 31, 2014.

24. LCDR Smith attended U.S. Navy OCS from November 1, 2014, through February 6, 2015, commissioning as an active-duty Navy officer (O-1) on the last day of OCS. After additional training, he earned his wings on June 9, 2017, beginning his service as a Naval aviator.

25. LCDR Smith has served on continuous active duty since graduating from OCS. His duty assignments included time aboard the USS *Harry S. Truman* and completed a combat deployment in the Red Sea. He is currently with the Tactical Training Group Atlantic on the Dam Neck Naval Base in Virginia Beach, VA.

26. When LCDR Smith transferred from the USAR to the Navy in 2014, however, there was an error in calculating the total number of points he had earned while in the USAR pursuant to 10 U.S.C. § 12732. Specifically, he was not fully credited for points that he had earned during his final partial year in that service.

27. Seeking to correct this error, LCDR Smith applied to the BCNR *pro se* on or about November 9, 2024.

28. In his application, LCDR Smith requested that his statement of service be corrected to reflect that he had earned a total of 1,464 points during his pre-commissioning service, rendering him eligible for enhanced pay under DoD 7000.14-R. Specifically, LCDR Smith requested O-1E through O-3E back pay, backdated to the time of his commissioning in the Navy on February 6, 2015, up until his promotion to O-4 in February 2025.

29. In support of his requested relief, LCDR Smith made two distinct arguments.

30. First, LCDR Smith argued that, during his final year in the USAR, he was in an active status for 161 days (September 29, 2013 – March 9, 2014) before entering the IRR. During this time, LCDR Smith was credited with 22 inactive duty points for duty he performed. However, pursuant to DoDI 1215.07, Section 3.1e, Table 2, because LCDR Smith had served between 159-

182 days during that period, he was actually entitled to also be credited with 7 pro-rated membership points, which would give him 29 points for the year. This total exceeds the 23 points in 161 days necessary for LCDR Smith to earn a partial year of qualifying service. *See* DoDI 1215.07, Section 3.1e, Table 1. As such, LCDR Smith's correct point total (1,464 points, calculated by adding these 29 points to his already-credited 1,340 USAR points and his 95 Navy points) entitles him to enhanced pay under DoD 7000.14-R.

31. Second, LCDR Smith argued that even if he was not eligible for enhanced pay under DoD 7000.14-R, the BCNR should nonetheless grant him O-1E through O-3E back pay, backdated to the time of his commissioning in the Navy on February 6, 2015, pursuant to the BCNR's broad discretion to "remove an injustice" in a servicemember's record. *See* 10 U.S.C. § 1552(a)(1).

32. In support of this argument, LCDR Smith cited his hard work while on active duty, the sacrifices he made for our country, the standard nature of enhanced pay for prior enlisted on active duty who later commission as officers, and the support of his superior officers.

33. LCDR Smith also stated that he had made mistakes in navigating his transfer from the USAR to the Navy based on bad advice and that if he had

> …understood the maze of policies and regulations applicable to retirement points and pay eligibility, I would have remained in the USAR until the end of my anniversary year before attending OCS. However, while applying to officer commissioning programs, I was informed by my USN recruiter that it would be in my best interest to leave the USAR earlier to maximize my chances of being selected for the [Navy flight] program.
>
> If at the time I had the benefit of my current level of education and military experience, I would have chosen differently (even just two additional drill weekends would have been sufficient to avoid my current situation). However, as a young enlisted Soldier, I was not fully informed of the significant financial impact that transferring to IRR would have on my future, and I instead relied on the recruiter's representations and assurances, to my detriment.

7

34. Most importantly, LCDR Smith noted that two of his unit administrators were relieved for negligence in accounting for soldiers' pay and service during drill periods and that their errors could have impacted his point totals downward.

35. LCDR Smith identified certain periods (January 2010; December 2011, during his deployment to Afghanistan; March 2013; May 2013; and October 2013) as likely to have been impacted by these individuals' malfeasance, stating that

> the possibility that I lost points during this period of my service is a relevant factor when considering whether to grant me equitable relief for missing what amounts to a negligible number of points (25, if my final anniversary year is deemed non-qualifying in its entirety) for E-pay eligibility.
>
> It is my belief, though, that the more than 20 points I was missing from my Chronological Statement of Retirement Points (Enclosure 5), which included 16 points missing from December 2011, when I was deployed to Afghanistan, was due to the negligence of one of these individuals.
>
> Additionally, there are multiple months missing from my Retirement Detail History…, which is very likely a result of negligence by both of these unit administrators. Specifically, those dates, which would equate to 4 points each, are January 2010, March 2013, May 2013, and October 2013. This brings an additional 16 points into question regarding the potential for my record to be considered even more incomplete.

36. LCDR Smith submitted several exhibits in support of his application, including the letter dated February 10, 2014, which confirmed his reassignment to the IRR.

37. On or about June 18, 2025, the Assistant Commander, Navy Personnel Command for Career Progression, submitted an advisory opinion on LCDR Smith's application, in response to the BCNR's request. The Advisory Opinion stated that LCDR Smith's final partial USAR anniversary year could not be counted towards E-Pay because he only earned 37 points, instead of 50, so these 37 points could not be added to his total.

38. LCDR Smith submitted his rebuttal to the advisory opinion on or about July 25,

8

2025.

39. On or about August 4, 2025, the BCNR reached a decision on LCDR Smith's application. The BCNR denied the application and all requested relief.

40. Although the BCNR noted that LCDR Smith's application was not filed in a timely manner, the BCNR found it in the interest of justice to waive the statute of limitations and consider LCDR Smith's case on the merits.

41. In support of its decision, the BCNR stated

> You [LCDR Smith] requested to receive O-1 E through O-3E back pay backdated to the time of your commissioning on 6 February 2015…The Board concluded that Reserve points earned in the USAR did not exceed the 1,460 points required to be eligible for E-pay in accordance with DoD 7000.14-R Financial Management Regulation.
>
> You assert that your final year in the U.S. Army Reserves should be determined to be a partial YQS in accordance with DODI 1215.07 and MILPERSMAN 1820-050, and that the 29 prorated points, when added to your 95 USN active duty points and the remaining USR points, will satisfy all requirements for E-Pay.
>
> However, the Board determined that each of those references refers to members who have a break in service that occurs during an anniversary year. The Board found no break in service during any anniversary year, therefore the Board determined that there is no error or injustice to warrant a change to your record.

42. The BCNR did not address LCDR Smith's argument that, even if he did not satisfy the strict requirements for enhanced pay under DoD 7000.14-R, he nonetheless should be granted enhanced pay pursuant to BCNR's broad discretion to "remove an injustice" in a servicemember's record. *See* 10 U.S.C. § 1552(a)(1).

43. In response to the BCNR's decision, LCDR Smith timely filed this complaint.

9

*Plaintiff's First Claim*

**Violation of 5 U.S.C. § 706 (2)(A) – When Reviewing LCDR Smith's Application, the BCNR Reached a Decision Unsupported by the Evidence of Record and Ignored LCDR Smith's Nonfrivolous Arguments.**

44. The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

45. Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

46. Decisions of the BCNR which are unsupported by the evidence of record are arbitrary and capricious: "To put it simply, a decision unsupported by evidence would be arbitrary." *Mitchell v. Del Toro,* 2024 WL 4891906 *1, *4 (D.D.C. November 26, 2024), citing *Ass'n of Data Processing Serv. Orgs. v. Bd. Of Govs. of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984).

47. A BCNR decision is also considered arbitrary and capricious when it "entirely fail[s] to consider an important aspect of the problem" presented in an application. *See Motor Vehicle Manufacturers' Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 43 (1983).

48. The BCNR entirely fails to consider an important part of the problem presented in an application if the BCNR either does not address, or does not explain why it is not addressing, non-frivolous arguments raised by an applicant. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997); *see also Saint–Fleur v. McHugh*, 83 F.Supp.3d 149, 155 (D.D.C. 2015); *Rudo v. Geren*, 818 F. Supp. 2d 17, 26-7 (D.D.C. 2011); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005).

49. If the BCNR meets an applicant's argument with silence, that means the BCNR has

failed to consider that argument. *Tennekoon v. Fanning,* 156 F.Supp.3d 208, 218 (D.D.C. 2016). *See also Mori v. Dep't of the Navy*, 917 F.Supp.2d 60, 64 (D.D.C.2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive").

50. Here, the BCNR reached a decision unsupported by the evidence of record. The BCNR also failed to consider LCDR Smith's non frivolous arguments.

51. Reviewing LCDR Smith's application, the BCNR noted that DoDI 1215.07 and MILPERSMAN 1820-050 "refer[] to members who have a break in service that occurs during an anniversary year."

52. But the BCNR then concluded that LCDR Smith had experienced "no break in service during any anniversary year," and that therefore "there is no error or injustice to warrant a change to [LCDR Smith's] record."

53. But evidence submitted by LCDR Smith – specifically, the letter dated February 10, 2014, which confirmed his reassignment to the IRR – confirmed that LCDR Smith had in fact experienced a break in service for the purposes of 10 U.S.C. § 101(d)(4) and DoDI 1215.07. That latter regulation defines "break in service" as "the event when a Service member transfers to an inactive status list, the inactive National Guard, the Retired Reserve, or is discharged to civilian life for longer than 24 hours." DODI 1215.07, Glossary G.2. In fact, that regulation also authorizes the revision of a Service member's anniversary date when the member returns to active status after a break in service. *Id.* at 3.1c.

54. The BCNR did not address this evidence, nor did it cite any evidence of its own to rebut the letter dated February 10, 2014, which confirmed LCDR Smith's reassignment to the IRR.

55. In fact, the BCNR does not even reference this IRR time when it lists out the

11

chronology of LCDR Smith's service.

56. The BCNR's conclusion that LCDR Smith had experienced "no break in service during any anniversary year" was therefore unsupported by the evidence of record. *See Mitchell,* 2024 WL 4891906 at *4.

57. The BCNR's conclusion that LCDR Smith had experienced "no break in service during any anniversary year" relatedly failed to explain why the BCNR believed that reassignment to the IRR would not constitute a break in service for the purposes of 10 U.S.C. § 101(d)(4) and DoDI 1215.07. The BCNR thus failed to respond to LCDR Smith's nonfrivolous argument that his reassignment to the IRR did constitute a break in service. *See, e.g., Mori*, 917 F.Supp.2d at 64.

58. The BCNR also failed to respond to LCDR Smith's argument that even if he was not eligible for enhanced pay under DoD 7000.14-R, the BCNR should nonetheless grant him O-1E through O-3E back pay, backdated to the time of his commissioning in the Navy on February 6, 2015, pursuant to the BCNR's broad discretion to "remove an injustice" in a servicemember's record. *See* 10 U.S.C. § 1552(a)(1).

59. In support of this argument, LCDR Smith cited his hard work while on active duty, the sacrifices he made for our country, the support of his superior officers, the bad advice he received when deciding to transfer from the USAR to the Navy, and the negligence of two of his unit administrators in accounting for soldiers' pay and service during drill periods, as well as the adverse impact that their errors could have had on his point totals.

60. But the BCNR did not respond to any of these arguments when evaluating LCDR Smith's application. Instead, the BCNR met these arguments with silence. *Tennekoon,* 156 F.Supp.3d at 218.

61. For all these reasons, the BCNR's decision was arbitrary and capricious. 5 U.S.C.

12

§ 706(2)(A).

### *Plaintiff's Second Claim*

**Violation of 5 U.S.C. § 706 (2)(A) – When Reviewing LCDR Smith's Application, the BCNR Failed to Correct Injustice Clearly Present in the Record.**

62. The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

63. Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

64. When the BCNR "fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014). *See also Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (Secretary obligated not only to properly determine the nature of any error or injustice, but to take "such corrective action as will appropriately and fully erase such error or compensate such injustice"); *Dodson v. United States Gov't Dept. of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (correction boards "have a duty to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief"); *Sanders v. United States*, 219 Ct.Cl. 285, 299 (1979) (holding that the Secretaries of the military departments, acting through correction boards, have not only the "power" but also the "duty" to correct injustice.)

65. Here, the BCNR failed to correct injustice clearly present in the record.

66. In his application to the BCNR, LCDR Smith argued that even if he was not eligible for enhanced pay under DoD 7000.14-R, the BCNR should nonetheless grant him O-1E through O-3E back pay, backdated to the time of his commissioning in the Navy on February 6, 2015,

13

pursuant to the BCNR's broad discretion to "remove an injustice" in a servicemember's record. *See* 10 U.S.C. § 1552(a)(1).

67. In support of this argument, LCDR Smith cited his hard work while on active duty, the sacrifices he made for our country, the support of his superior officers, the bad advice he received when deciding to transfer from the USAR to the Navy, and the negligence of two of his unit administrators in accounting for soldiers' pay and service during drill periods, as well as the adverse impact that their errors could have had on his point totals.

68. As noted *supra,* the BCNR failed to respond to any of these arguments, let alone resolve them as was its duty under the law. On this basis alone, the BCNR's decision is arbitrary and capricious. *See Tennekoon,* 156 F.Supp.3d at 218; *Mori*, 917 F.Supp.2d at 64.

69. But the BCNR's denial of LCDR Smith's application is also arbitrary and capricious because the BCNR has an independent requirement to correct injustice clearly present in the record. 10 U.S.C. § 1552(a)(1); *see Haselwander*, 774 F.3d at 996.

70. LCDR Smith suffered an injustice when he received bad advice from his assigned recruiter when deciding to transfer from the USAR to the Navy. When a servicemember receives bad advice from an official representing a service branch, that constitutes an injustice clearly present in the record, and military correction boards are required to correct it, even if such correction results in a "windfall" for the applicant. *See White v. Secretary of Army,* 878 F.2d 501, 505 (D.C. Cir. 1989).

71. LCDR Smith also suffered an injustice when two of his unit administrators acted negligently in accounting for soldiers' pay and service during drill periods. When a service branch makes errors in processing paperwork, that constitutes an injustice requiring correction by a military correction board. *See Haselwander*, 774 F.3d at 996 (finding that the Army Board for the

Correction of Military Records acted contrary to its mandate to correct an injustice clearly present in the record when it failed to award an applicant a Purple Heart when the Army misplaced paperwork documenting his combat injury).

72. For both these reasons, and others contained in LCDR Smith's application, the BCNR failed its statutory duty to correct a clearly present injustice. 10 U.S.C. § 1552(a)(1); *see Haselwander*, 774 F.3d at 996.

73. All in violation of 5 U.S.C. § 706 (2)(A).

### *Prayer for Relief*

WHEREFORE, Plaintiff prays that judgment be entered:

(a) Holding that when reviewing LCDR Smith's application, the BCNR reached a decision unsupported by the evidence of record, and ignored LCDR Smith's nonfrivolous arguments; and,

(b) Holding that when reviewing LCDR Smith's application, the BCNR failed to correct injustice clearly present in the record, in violation of 5 U.S.C. § 706 (2)(A); and,

(c) Remanding LCDR Smith's application to the BCNR for a new review which complies with all applicable laws and regulations; and,

(d) Granting an award of attorney's fees to LCDR Smith for the costs of bringing this action, under the Equal Access to Justice Act (28 U.S.C. § 2412(d)(1)(A), (B)); and,

(e) Any other and further relief as the Court may deem, in the circumstances, be just and proper.

Dated December 22, 2025.                    Respectfully submitted,

*/s/ Dylan Thayer*
Dylan Thayer
DC Bar No. 90015821

/s/*David P. Sheldon*
David P. Sheldon
DC Bar No. 446039
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

*Attorneys for Plaintiff*